Domingo T. ROBLES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A04–0104–CR–162.

Court of Appeals of Indiana.

Nov. 21, 2001.

Derek R. Jones, Jones, Huff & Jones, Plymouth, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Domingo T. Robles ("Robles") appeals his convictions for possession of an altered handgun [1] as a Class C felony and criminal gang activity,[2] a Class D felony. We affirm in part and reverse in part.

### Issues

Robles raises two issues for our review, which we restate as follows:

I.  whether the State presented sufficient evidence to support a conviction for possession of an altered handgun; and

II. whether the State presented sufficient evidence to support a conviction for criminal gang activity.

---

1.  IND.CODE §§ 35–47–2–18 and 35–47–2–23(b).

### Facts and Procedural History

The facts most favorable to the convictions reveal that on June 8, 2000, Robles, two fellow Latin Kings gang members, and two young women decided to go to Flat Lake, in Marshall County, Indiana. The group stopped at a grocery store, where Robles bought two cases of beer, a bottle of vodka, ice, and some firewood. When they arrived at the lake, they built a campfire, drank the beer and vodka, listened to music, and talked. At one point, another group of people arrived at the lake and also began to drink. After the second group left, the remaining five took turns firing a gun at beer cans and into the lake, and one of the young women became upset and screamed when one of the young men untied her bikini top and threw it into the campfire.

At approximately 1:00 a.m. on June 9, 2000, Officer Daniel Butt ("Butt") of the Marshall County Police Department responded to a report of gunshots and screaming coming from the lake. Butt tested everyone except the twenty-one-year-old Robles for alcohol consumption. All four tested positive and were arrested for underage consumption of alcohol. Butt then questioned the three men about the presence of a gun or gunshots, and all three denied the presence of a gun. Shortly after other law enforcement officials arrived on the scene, an Intratec 9mm luger semi-automatic handgun was discovered near a trashcan that had contained the beer and ice. The serial number on the gun had been obliterated. While the police were at the scene, the three men made statements about the Latin Kings gang, sang rap songs about the gang, and made several gang hand signs.

---

2.  *Id.* § 35–45–9–3.

On June 9, 2000, the State charged Robles with possession of an altered handgun, criminal gang activity, furnishing alcohol to a minor,[3] and contributing to the delinquency of a minor.[4] At trial Butt testified that the gun's serial number was no longer visible and that the area where the serial number had been located was "very shiny." Other witnesses testified that they had seen Robles with the gun on the night of the arrest and at his birthday party a week earlier. They testified that the gun was a birthday gift. Additionally, two photographs of Robles holding the gun were entered into evidence. One was taken on the night of his arrest and showed Robles making a gang sign and holding the gun. The other was taken at his birthday party and showed Robles pointing the gun at the camera. On February 1, 2001, a jury returned a guilty verdict on all four charges.

### Discussion and Decision

#### *Standard of Review*

When reviewing a claim for the sufficiency of the evidence, "we do not reweigh the evidence or assess the credibility of witnesses." *Kilpatrick v. State,* 746 N.E.2d 52, 60 (Ind.2001). "Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* We must determine the sufficiency of the evidence for each element of the charged offenses. *See J.T. v. State,* 718 N.E.2d 1119, 1122 (Ind.Ct.App.1999).

#### *I. Possession of an Altered Handgun*

Robles contends that the State presented insufficient evidence to prove the element of knowledge for the altered handgun charge. Indiana Code Section 35–47–2–18(2) makes it illegal to "possess any handgun on which the . . . serial number, or other mark of identification has been changed, altered, removed, or obliterated; except as provided by applicable United States statute." Robles correctly asserts that we have interpreted this statute as requiring the State to prove that he knew that the serial number of the gun had been altered. *See Wagerman v. State,* 597 N.E.2d 13, 16 (Ind.Ct.App.1992), *trans denied.*

Robles analogizes the facts of his case to those in *Wagerman,* 597 N.E.2d at 16, where the weapons at issue were thrust upon Wagerman as he exited a vehicle and was immediately searched. In that case, we noted that defendants' opportunities to apprise themselves of the facts and avoid the prohibited conduct vary widely from case to case and found that Wagerman had no opportunity to do so. *See id.* Unlike Wagerman, however, Robles had the gun in his possession at least one week before he was arrested and had sufficient opportunity to apprise himself of the conspicuous lack of a serial number on the handgun and avoid continued possession of the weapon.

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). "[K]nowledge may be proved by circumstantial evidence and inferred from the circumstances and facts of each case." *Heavrin v. State,* 675 N.E.2d 1075, 1079 (Ind.1996). Robles states that "[t]here is nothing in the record whatsoever that shows that [he] knew the serial number of

---

**3.** *Id.* § 7.1–5–7–8.

**4.** *Id.* § 35–46–1–8. Robles does not challenge these convictions on appeal.

the handgun had been altered." Butt testified, however, that the spot where the serial number had been filed off was "shiny." Further, Robles possessed the gun for over a week and had ample opportunity to discover that the serial number had been removed. Thus, based on the circumstantial evidence and the inferences drawn therefrom, a reasonable jury could have found beyond a reasonable doubt that Robles knew that the serial number had been obliterated.

## II. Criminal Gang Activity

Robles also challenges whether the State sufficiently established a nexus between his gang membership and the charged criminal activity. To prove criminal gang activity, the State was required to prove beyond a reasonable doubt that he

(1) is an active member of a group with five or more members which, promotes, sponsors, assists in, or participates in or requires as a condition of membership or continued membership the commission of a felony or an act that would be a felony if committed by an adult or a battery, (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's criminal goals.

*Trice v. State*, 693 N.E.2d 649, 651 (Ind.Ct. App.1998) (citing IND.CODE §§ 35–45–9–3 and 35–45–9–1). The specific intent element requires the State to prove a nexus between Robles' alleged gang membership and the charged crimes.[5] *See id.* (reversing defendant's criminal gang activity conviction where the State failed to prove a nexus between his alleged gang membership and the battery with which he was charged); *Robinson v. State*, 730 N.E.2d 185, 195 (Ind.Ct.App.2000) (reversing defendant's criminal gang activity conviction where "the State presented no substantive evidence of a nexus between his alleged gang membership" and the charged crimes), *trans denied; see also Kilpatrick*, 746 N.E.2d at 62 (concluding that there was insufficient evidence to support a criminal gang activity conviction where the State presented no evidence that defendant had a specific intent to further the gang's criminal goals and, instead, only presented evidence that defendant was a member of a gang that committed criminal offenses).

Here, the State similarly failed to establish a nexus between Robles' gang membership and the charged crimes. While the State may have established that Robles was a member of a gang that commits

5. Since Indiana Code Section 35–45–9–3 does not specifically require a nexus between the criminal gang activity and the charged crime, the State argues that we should not require proof of such a nexus to affirm the conviction. In interpreting the criminal gang activity statute, however, we have noted that

[t]o be constitutional, a statute must be carefully drafted or be authoritatively construed to punish only constitutionally unprotected conduct. We will assign a constitutional meaning to a statute if we can do so while remaining faithful to the legislative purpose. The language of a judicial opinion is as good as the language of the statute construed in the opinion.

*Helton v. State*, 624 N.E.2d 499, 505 (Ind.Ct. App.1993), *cert. denied*, 520 U.S. 1119, 117

S.Ct. 1252, 137 L.Ed.2d 333 (1997) (citations omitted). In *Helton*, we construed the criminal gang activity statute "to require that the active member with guilty knowledge also have a specific intent or purpose to further the group's criminal conduct before he may be prosecuted." *Id.* at 508. The specific intent requirement is necessary to insure that the criminal gang activity statute does not interfere with one's right to freedom of association and is not unconstitutionally vague or overbroad. *See id.* at 511. We further concluded that "[r]eading the requirement of specific intent into the [criminal gang activity statute] is a permissible construction which does not require us to improperly substantially rewrite the statute." *See id.* at 508 n. 13.

criminal offenses and that he had knowledge of the gang's criminal activity, it presented no evidence that he had the specific intent to further his gang's criminal goals by committing the charged crimes. Thus, the State failed to present probative evidence from which a reasonable jury could have found Robles guilty of criminal gang activity beyond a reasonable doubt.

Affirmed in part and reversed in part.

KIRSCH, J., and BAILEY, J., concur.