## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 30 2015, 10:04 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

N.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

October 30, 2015

Court of Appeals Case No.
49A02-1504-JV-201

Appeal from the Marion Superior Court, Juvenile Division

The Honorable Gary Chavers, Magistrate

Trial Court Cause No.
49D09-1501-JD-144

**Robb, Judge.**

# Case Summary and Issues

[1] N.W. appeals his adjudication as a delinquent child for what would be, if committed by an adult, Class A misdemeanor dangerous possession of a firearm and Class B misdemeanor possession of marijuana. N.W. raises the following restated issues for our review: 1) whether the juvenile court abused its discretion by admitting evidence obtained during a warrantless search; and 2) whether the State presented sufficient evidence to support the juvenile court's findings. Concluding the juvenile court did not abuse its discretion and the evidence was sufficient to prove N.W. committed dangerous possession of a firearm and possession of marijuana, we affirm.

# Facts and Procedural History

[2] On January 22, 2015, probation officer Tristen Hulse received notice to conduct a probationary search at N.W.'s home in Marion County. At that time, N.W. was on juvenile formal probation for true findings of battery resulting in bodily injury and possession of marijuana. N.W.'s probation officer, Markita Grimes, had received information that N.W. was in possession of a handgun. Hulse went to N.W.'s home the same day, accompanied by probation officers Nathan Dorsch and Steve Hoffman.

[3] When Hulse knocked on the door, N.W.'s sister answered. Hulse asked if N.W. was home; he was not. As Hulse was explaining the purpose of the visit, N.W.'s mother came to the door. N.W.'s mother allowed the officers to enter

the home and told her daughter to take the officers to N.W.'s bedroom. Hulse asked N.W.'s mother if N.W. shared the bedroom with other family members; she said he did not.

[4] Dorsch and Hoffman searched N.W.'s bedroom while Hulse spoke with N.W.'s mother. The search revealed a handgun, ammunition, and an ammunition magazine in the ceiling, as well as digital scales, baggies, and what appeared to be marijuana and "spice" under N.W.'s bed.[1] Forensic testing later confirmed the vegetation was indeed marijuana and "spice."

[5] The State filed a delinquency petition the next day, alleging N.W. committed dangerous possession of a firearm, a Class A misdemeanor if committed by an adult, and possession of marijuana, a Class B misdemeanor if committed by an adult. N.W. filed a motion to suppress the evidence seized from his bedroom, which the juvenile court denied. Following a denial hearing, the juvenile court found the allegations true and adjudicated N.W. a delinquent child. The juvenile court placed N.W. on formal probation with a suspended commitment to the Indiana Department of Correction. N.W. now appeals.

---

[1] "Spice" refers to certain synthetic forms of marijuana. *See Elvers v. State*, 22 N.E.3d 824, 828 (Ind. Ct. App. 2014).

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[6] N.W. appeals the admission of evidence seized from his bedroom. We review the juvenile court's ruling on admissibility for an abuse of discretion and reverse only if the ruling is clearly against the logic and effect of the facts and circumstances and the error affects the juvenile's substantial rights. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). In reviewing the juvenile court's decision, we do not reweigh the evidence, and we consider conflicting evidence most favorably to the ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We defer to the juvenile court's factual determinations unless clearly erroneous, but review the constitutionality of the search de novo. *Id.*

### B. Probationary Search of N.W.'s Bedroom

[7] N.W. contends the warrantless search of his bedroom violated the Fourth Amendment's prohibition against unreasonable searches and seizures.[2] A probationer's home, like anyone else's, is protected by the Fourth Amendment, but the United States Supreme Court has recognized the operation of a probation system "presents 'special needs' beyond normal law enforcement that

---

[2] N.W. further argues the search violated Article 1, Section 11 of the Indiana Constitution, but presents no authority or independent analysis supporting a separate standard under the state constitution. As a result, any state constitutional claim is waived. *Lockett v. State*, 747 N.E.2d 539, 541 (Ind. 2001).

may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987). Probationers therefore enjoy only "conditional liberty properly dependent on observance of special [probation] restrictions," which are meant to assure probation serves as a period of genuine rehabilitation. *Id.* at 874-75 (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

[8] In *State v. Schlechty*, 926 N.E.2d 1, 2 (Ind. 2010), *cert. denied*, 562 U.S. 1150 (2011), our supreme court concluded "a warrantless search of a probationer's property that is conducted reasonably, supported by a probation search term and reasonable suspicion of criminal activity, complies with the dictates of the Fourth Amendment." N.W. makes no argument that the search itself was conducted unreasonably, and as a condition of probation, he agreed to be "subject to search and seizure by a probation officer or law enforcement officer who has knowledge of [his] probationary status and who has a reasonable basis for such action." Appellant's Appendix at 21.[3] On appeal, N.W. argues the search was not supported by a reasonable suspicion of criminal activity.[4]

---

[3] During the denial hearing, the juvenile court took judicial notice of N.W.'s probation conditions. Although N.W.'s probation conditions were not admitted into evidence, the relevant provision appears in the probable cause affidavit, pre-dispositional report, and probation conditions agreed to in the present case, which modified the conditions already in place at the time of the search.

[4] The State contends the search term included in N.W.'s probation conditions requiring a "reasonable basis" for a search "obviated the need for reasonable suspicion before a probationary search could be conducted." Brief of Appellee at 8-9. We disagree. Although a probationer "may, by a valid advance consent or search term in the conditions of release, authorize a warrantless search of his or her premises without reasonable suspicion," the search term must be "clearly expressed" and the probationer "unambiguously informed." *State v. Vanderkolk*, 32 N.E.3d 775, 775, 778 (Ind. 2015) (quoting *United States v. Knights*, 534 U.S. 112, 119

[9] While "reasonable suspicion can arise from information that is less reliable than that required to show probable cause," *Alabama v. White*, 496 U.S. 325, 330 (1990), the Fourth Amendment still requires "at least a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The officer must have "a reasonable, articulable suspicion that criminal activity is afoot." *Id.* An "inchoate and unparticularized suspicion or 'hunch'" is insufficient. *Id.* at 124 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

[10] Here, Hulse conducted a probationary search at N.W.'s home because Grimes had received information that N.W. was in possession of a handgun. The "source" of the information was a concerned parent, whose son had disclosed N.W.'s possession of the handgun. Transcript 10-11. The parent told another probation officer, who relayed the information to Grimes. Upon receiving the tip, Grimes spoke with the parent directly. The parent did not personally observe N.W. with a handgun, but Grimes "had dealt with her in the past," and "any information that she had [provided] in the past was always found to be true." *Id.* at 12.

---

(2001)). It is unclear what exactly "ha[ving] a reasonable basis" for a search means, Appellant's App. at 21, but this language more closely resembles a requirement of reasonable suspicion than the general requirement of reasonableness under the Fourth Amendment. *See Schlechty*, 926 N.E.2d at 6-7 (distinguishing "the 'reasonableness' of the search under the Fourth Amendment on the one hand, versus 'reasonable suspicion' to support the search on the other"). Because N.W.'s probation conditions did not clearly express or unambiguously inform N.W. that he would be subject to entirely suspicionless searches, reasonable suspicion was required.

N.W. argues the probation officers lacked reasonable suspicion because the information justifying the search was "unreliable" and "based upon multiple levels of hearsay from numerous unidentified sources." Appellant's Brief at 4. We disagree. Under the imputed knowledge doctrine,

> an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.

*State v. Gray*, 997 N.E.2d 1147, 1153 (Ind. Ct. App. 2013) (quoting *U.S. v. Colon*, 250 F.3d 130, 135-36 (2d Cir. 2001)), *trans. denied*. The probation officers who conducted the search were therefore imputed with the knowledge of the probation officer who spoke with the parent directly.

Furthermore, it is well-established that a tip from a "concerned citizen" may give rise to reasonable suspicion. *Russell v. State*, 993 N.E.2d 1176, 1180 (Ind. Ct. App. 2013). If "sufficiently reliable" based on the underlying facts and circumstances, *id.*, even an unidentified concerned citizen tip may establish reasonable suspicion. *Bogetti v. State*, 723 N.E.2d 876, 879-80 (Ind. Ct. App. 2000). And our supreme court has recognized a concerned citizen tip is generally *more* reliable than a tip from a criminal informant or anonymous tipster. *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011) ("These individuals generally come forward with information out of a spirit of good citizenship and a desire to help law enforcement.").

[13] Likewise, hearsay may give rise to reasonable suspicion. 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.5(b) (5th ed.); *see also State v. Bishop*, 203 P.3d 1203, 1212-13 (Idaho 2009) (collecting cases) ("[T]he fact that a tip is based on hearsay information is only a factor to consider in determining whether a [search] was justified—it is not an absolute bar to a finding of reasonable suspicion.").

[14] Although the parent who provided the information was not identified at the denial hearing, she was not anonymous. Grimes knew the parent, considered her reliable, and spoke with her personally after receiving the information about N.W. Under these circumstances, the concerned parent's tip demonstrated sufficient reliability to establish reasonable suspicion to believe N.W. was engaging in criminal activity while on probation.

[15] In sum, the probationary search "complie[d] with the dictates of the Fourth Amendment" because it was "supported by a probation search term and reasonable suspicion of criminal activity." *Schlechty*, 926 N.E.2d at 2. We therefore conclude the trial court did not abuse its discretion by admitting the evidence seized from N.W.'s bedroom.

# II. Sufficiency of Evidence

## A. Standard of Review

[16] N.W. also argues the State presented insufficient evidence to support the juvenile court's findings.

> In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the [judgment], and we will affirm the [adjudication] if there is probative evidence from which a reasonable [factfinder] could have found the defendant guilty beyond a reasonable doubt.

*K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013) (alterations in original) (citations and internal quotation marks omitted).

## B. Dangerous Possession of a Firearm and Possession of Marijuana

[17] The juvenile court entered true findings for dangerous possession of a firearm, a Class A misdemeanor if committed by an adult,[5] and possession of marijuana, a Class B misdemeanor if committed by an adult.[6] N.W. argues the evidence was insufficient to support these findings because he was not home at the time of the search and there was "no evidence" connecting him to the handgun or the marijuana. Appellant's Br. at 5.[7] Yet, both items were discovered in N.W.'s bedroom, which he alone occupied. As our supreme court recently explained,

---

[5] Indiana Code section 35-47-10-5(a) provides in relevant part: "A child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in [Ind. Code § 35-47-10-1] commits dangerous possession of a firearm . . . ." None of the exemptions contained in Indiana Code section 35–47–10–1 apply to the facts of this case.

[6] Indiana Code section 35-48-4-11(a)(1) provides in relevant part: "A person who . . . knowingly or intentionally possesses (pure or adulterated) marijuana . . . commits possession of marijuana . . . ."

[7] N.W. contends the State was required to show a "nexus" between himself and the items seized. Appellant's Br. at 12. But N.W. relies on cases involving criminal gang activity, an offense that has been construed to require the State to prove a nexus between a defendant's alleged gang membership and the

> [O]ur jurisprudence on the issue of "possession" is rather straightforward: it can be either actual or constructive. Actual possession occurs when a person has direct physical control over the item. When the State cannot show actual possession, it may nonetheless prevail on proof of constructive possession. A person constructively possesses [an item] when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it.

*Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015) (alteration in original) (citations and internal quotation marks omitted).

[18] In a constructive possession case such as this, "where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of the contraband and was capable of controlling it." *Harrison v. State*, 32 N.E.3d 240, 248 (Ind. Ct. App. 2015), *trans. denied.* We therefore conclude the State presented sufficient evidence to support the juvenile court's finding that N.W. was in constructive possession of the handgun and the marijuana found in his bedroom. *See Young v. State*, 478 N.E.2d 50, 51 (Ind. 1985) (concluding there was sufficient evidence of constructive possession of cocaine in the defendant's bedroom where the

---

charged crime. *See e.g.*, *Robles v. State*, 758 N.E.2d 581, 584 & n.5 (Ind. Ct. App. 2001) (citing Ind. Code § 35-45-9-3), *trans. denied*. With regard to the criminal gang activity statute, the specific intent requirement is necessary to insure the statute "does not interfere with one's right to freedom of association and is not unconstitutionally vague or overbroad." *Id.* at 584 n.5. There is no such requirement for either dangerous possession of a firearm or possession of marijuana, as neither statute presents the same constitutional concerns.

defendant shared a house with others but "exercised private dominion over her own bedroom").

# Conclusion

The juvenile court did not abuse its discretion by admitting evidence, and the State presented sufficient evidence to support the juvenile court's findings. N.W.'s adjudication as a delinquent child is therefore affirmed.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.